UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD SCOTT,<br><br>　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>AMERICAN WAGERING, INC.,<br><br>　　　　　　　　Defendant(s). | Case No. 2:20-CV-1282 JCM (DJA)<br><br>ORDER |

　　　　Presently before the court is defendant American Wagering, Inc. d/b/a William Hill's ("defendant") motion for summary judgment. (ECF No. 26). Plaintiff Richard Scott ("plaintiff") filed a response (ECF No. 29), to which defendant replied (ECF No. 30).

**I.   Background**

　　　　The instant action arises out of a dispute concerning defendant's allegedly wrongful termination of plaintiff's employment. (*See* ECF No. 1 at 5). Plaintiff—who is both black and British—claims that his September 13, 2019, termination was the product of discriminatory animus. (*Id.*).

　　　　Plaintiff filed his complaint on July 9, 2020, alleging (1) that defendant discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, (2) that defendant similarly disobeyed Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and (3) that defendant violated Section 613.330 of the Nevada Revised Statutes ("NRS")—Nevada's version of Title VII. (*Id.* at 3). Defendant now moves for summary judgment on all of plaintiff's claims. (ECF No. 26).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d

James C. Mahan
U.S. District Judge

- 2 -

1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III. Discussion**

Plaintiff's complaint alleges three distinct claims: (1) that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by wrongfully terminating plaintiff on the basis of his race and national origin; (2) that defendant violated Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 1981, by depriving plaintiff of his right to make and enforce his employment contract; and (3) that defendant violated NRS § 613.330, by wrongfully terminating plaintiff. (ECF No. 1).

Defendant raises three main arguments in response to plaintiff's allegations: (1) that plaintiff has failed to establish a *prima facie* case for Title VII discrimination; (2) that, even if plaintiff pled a proper *prima facie* case, plaintiff cannot demonstrate that defendant's proffered reasons for the termination were merely pretext for discrimination; and (3) that plaintiff failed to establish that racial discrimination was the "but-for" cause of his termination under § 1981. (ECF Nos. 26; 28).

A. <u>The court grants defendant's motion for summary judgment on plaintiff's Title VII claim because plaintiff fails to establish a *prima facie case* of discrimination and fails to show that defendant's proffered, non-discriminatory justification was merely pretext for discrimination.</u>

Title VII of the Civil Rights Act of 1964 prohibits employers from "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . or national origin." 42 U.S.C. § 2000e-2(a)(1).

The United States Supreme Court established the legal framework for Title VII claims in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, "the complainant in a Title VII trial must carry the initial burden . . . of establishing a prima facie case of racial discrimination." *Id.* at 802. Once the plaintiff pleads a sufficient *prima facie* case, the burden then shifts to the defendant to proffer a "legitimate, nondiscriminatory reason for the [adverse employment action]." *Id.* If the defendant successfully proffers a non-discriminatory justification, the burden then shifts back to the plaintiff to demonstrate that the stated reason for the adverse employment action "was in fact pretext." *Id.* at 804.

    *1. Plaintiff fails to establish a sufficient prima facie case.*

To establish a *prima facie* case of discrimination, the plaintiff must show (1) that he or she belongs to a protected class, (2) that he or she was qualified for the position and performing according to his or her employer's expectations, (3) that he or she experienced an adverse employment action, and (4) that "similarly situated individuals outside [his or her] protected class were treated more favorably, or that other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

In the context of a *prima facie* case, "similarly situated individuals" refers to employees who are "similarly situated in all material respects." *Moran v. Selig*, 337 F.3d 748, 755 (9th Cir. 2006) (citing *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002)).

James C. Mahan
U.S. District Judge

- 4 -

Employees may be deemed similarly situated when they have comparable jobs and exhibit similar behavior. *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).

Here, defendant does not dispute that plaintiff—who is both black and British—belongs to a protected class under Title VII, and that plaintiff's termination on September 13, 2019, constituted an adverse employment action. (*See* ECF No. 26 at 9, 15). Defendant instead contends that plaintiff is unable to (1) demonstrate that he was performing satisfactorily, and (2) identify similarly situated employees who received favorable treatment. (*Id.* at 15). The court agrees with defendant, finding virtually no evidence that plaintiff performed his job satisfactorily or that defendant treated similarly situated employees more favorably.

Plaintiff has a history of workplace misconduct and poor performance, as evidenced by the multiple Performance Improvement Plans ("PIP") that he had received. (ECF Nos. 27-7; 27-8). Both the 60-day PIP and 30-day PIP outline that plaintiff was the root cause of multiple outages which disrupted consumer access to defendant's platform. (ECF Nos. 27-7 at 2; 27-8 at 2). Moreover, plaintiff's 30-day PIP—which served as plaintiff's "final written warning"—notes that plaintiff had become "very confrontational" and prone to additional errors. (ECF No. 27-8 at 2–3). For example, the 30-day PIP outlines, among other things, (1) that plaintiff continued "pushing WHUK architecture . . . despite being told on several occasions that WHUK architecture may not be compatible with WHUS initiatives," (2) that, in February, 2019, plaintiff "put the entire Mississippi field trial in jeopardy" when he failed to properly set up the restart function on the Mississippi kiosks, and (3) that plaintiff was continually "missing emails and meeting notifications." (ECF No. 27-8 at 2–3).

Chief Technology Officer Adam Goldstein—whom plaintiff has *not* accused of harboring discriminatory animus (*see* ECF No. 29 at 12:26–12:27)—oversaw plaintiff's supervisor, Ali Qutob's decision to issue plaintiff the 30-day PIP. (ECF No. 29-5 at 10). Thus, plaintiff's shortcomings were well established and agreed upon employees other than Qutob. Plaintiff does not appear to challenge the individual items within each PIP, but instead generally objects to them and classifies them as complete fabrications. (ECF No. 29 at 13). Such conclusory statements cannot create a genuine issue of material fact. *Taylor*, 880 F.2d at 1045.

**James C. Mahan**
**U.S. District Judge**

- 5 -

Plaintiff's opposition to defendant's motion for summary judgment is almost completely devoid of factual allegations or supporting evidence. (*See* ECF No. 29). Plaintiff attempts to disprove defendant's allegations of poor workplace performance in Part IV.B.1 of his opposition, which is entitled "[Plaintiff] Worked Successfully for Defendant for more than five years before his first discipline." (*Id.* at 8). Yet this section addresses neither plaintiff's performance nor his conduct history. (*Id.* at 8–9). Rather, plaintiff discusses defendant's efforts to recruit and hire him, neither of which relate *even remotely* to plaintiff's subsequent performance. (*See id.*). Even if, somehow, plaintiff had demonstrated that he worked successfully for five years without incident, such a showing would *still* not demonstrate that he maintained an adequate level of performance throughout the entirety of his employment with defendant.

Because he has failed to provide any evidence that he was performing competently at the time of his termination, plaintiff is unable to identify a similarly situated employee that received favorable treatment. Plaintiff does not—and, based on the record, apparently cannot—point to a *specific* employee that exhibited behavior similar to his own that received different treatment. *See Vasquez*, 349 F.3d at 641. In other words, plaintiff's poor conduct has set him apart from his peers and therefore prevents him from demonstrating the required elements of a *prima facie* case of discrimination. *See id.*; *Moran*, 337 F.3d at 755; *Hawn*, 615 F.3d at 1156.

Nevertheless, in the interest of fairness at the summary judgment stage, the court will additionally consider plaintiff's ability to satisfy his burden of establishing pretext under the *McDonnell Douglas* framework.

> *2. Even assuming that plaintiff had established a prima facie case of discrimination, plaintiff cannot demonstrate that defendant's nondiscriminatory reasons were mere pretext.*

A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Shelley v. Green*, 666 F.3d 599, 609 (9th Cir. 2012). In doing so, the plaintiff must produce sufficient evidence so as to create a genuine issue of material fact. *Dominguez-Curry v.*

**James C. Mahan**
**U.S. District Judge**

- 6 -

*Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000)).

Here, plaintiff can neither establish pretext indirectly nor directly. The court has already noted that plaintiff's complaint and opposition to the motion both suffer from a lack of evidentiary support. *See supra* Part III.A.1. To reiterate, plaintiff was unable to proffer *any* facts that demonstrate he had been performing adequately up until his termination in September 2019. (*See* ECF Nos. 1; 29). Instead, plaintiff merely discussed the recruitment and hiring process that he had undergone to obtain the position. (*See* ECF No. 29 at 8–9). As a result, plaintiff cannot demonstrate that defendant's nondiscriminatory reason is "unworthy of credence." *See Shelley*, 666 F.3d at 609.

Furthermore, plaintiff cannot demonstrate that "unlawful discrimination more likely motivated" defendant to terminate his employment. *Id.* In his affidavit, plaintiff avers that Qutob made derogatory comments about black and British people in front of plaintiff. (ECF No. 29-3 at 2 ¶¶ 10–11). Yet in his deposition, plaintiff admits that he in fact never heard Qutob make such statements. (ECF No. 26-4 at 27).

Finally, and perhaps most damning to plaintiff's action, is that several management-level employees—whom plaintiff has *not* accused of harboring discriminatory animus (*See* ECF No. 29 at 12:26–12:27)—were involved in plaintiff's termination. (ECF No. 26-6 at 11–12). While plaintiff avers that Qutob possessed some measure of discriminatory animus, plaintiff communicated to Goldstein that plaintiff "[had] absolutely no problems with [Goldstein] . . . or any other manager at the company." (ECF No. 29 at 12:26–12:27). Plaintiff's termination was ultimately decided by several managerial staff members, including Goldstein, human resources manager Debinique Watts-Blackburn ("Blackburn"), and supervisor Matthew Valimaki. (ECF No. 26-6 at 11–12). Plaintiff's termination was not the product of one man's discriminatory ideations. Rather, plaintiff's termination was the outcome of group-based deliberations and was later investigated by Blackburn to ensure its validity. (ECF Nos. 26-6 at 6–7; 29 at 15). Blackburn's investigation was ultimately unable to substantiate plaintiff's allegations of racial discrimination. (ECF No. 29 at 15:22).

**James C. Mahan**
**U.S. District Judge**

Thus, plaintiff is unable to establish pretext either directly or indirectly. Plaintiff, therefore—in addition to his inability to establish a *prima facie* case of discrimination—cannot satisfy his burden to demonstrate that defendant's proffered reasons were mere pretext. *See McDonnell Douglas*, 411 U.S. at 804; *Shelley*, 666 F.3d at 609.

Accordingly, the court grants defendant's motion for summary judgment on plaintiff's 42 U.S.C. § 2000e and NRS § 613.330 claims.

> B. The court grants defendant's motion for summary judgment on plaintiff's § 1981 claim because plaintiff is unable to demonstrate that racial discrimination was the "but-for" cause of plaintiff's termination.

Under federal law, "[a]ll persons within the . . . United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). This provision entitles all individuals to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In racial discrimination claims under § 1981, the plaintiff "bears the burden of showing that race was a but-for cause of [the] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

As with § 2000e actions, claims under § 1981 require the plaintiff to establish a *prima facie* case of discrimination in order to survive the summary judgment stage. *Brown v. King Cnty.*, 823 Fed.Appx. 478, 480 (9th Cir. 2020) (citing *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017)). The required elements of a *prima facie* case under § 1981 are identical to those under 42 U.S.C. § 2000e. *See id.*; *Hawn*, 615 F.3d at 1156.

Here, plaintiff does not plead any additional factual allegations in support of his § 1981 claim. (*See* ECF No. 29 at 16). Instead, the portion of plaintiff's opposition that addresses his § 1981 claim rests entirely on conclusory language. (*See id.*). The court has already addressed plaintiff's failure to establish a *prima facie* case throughout the remaining portion of his briefing. *See supra* Part III.A.1. Therefore, without a sufficient *prima facie* case of racial discrimination, plaintiff's § 1981 claim cannot survive summary judgment. *Brown*, 823 Fed.Appx at 480.

**James C. Mahan**
**U.S. District Judge**

- 8 -

Accordingly, the court grants defendant's motion for summary judgment on plaintiff's 42 U.S.C. § 1981 claim.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 26) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment in favor of defendant and close this case accordingly.

DATED August 3, 2022.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE